810 A.2d 81 (2002)
355 N.J. Super. 283
STATE of New Jersey, Plaintiff-Respondent,
v.
Stanton DRISCO, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued October 29, 2002.
Decided November 25, 2002.
*82 *83 Paul Casteleiro, Hoboken, argued the cause for appellant.
Steven J. Kaflowitz, Assistant Prosecutor, argued the cause for respondent (Thomas V. Manahan, Union County Prosecutor, attorney; Patricia L. Cronin, Assistant Prosecutor, of counsel and on the brief).
Before Judges SKILLMAN,[1] CUFF and LEFELT.
The opinion of the court was delivered by LEFELT, J.A.D.
Defendant Stanton Drisco is serving an aggregate sentence of twenty-years imprisonment with ten-years parole ineligibility for several Union County convictions including three counts of first-degree robbery, one count of second-degree possession of a firearm for an unlawful purpose, and one count of third-degree possession of a firearm without a permit. After exhausting all direct appeals, defendant petitioned for post-conviction relief (PCR). He contended first that trial counsel was ineffective because counsel did not present an alibi defense to the jury. Second, defendant argued that trial counsel had a conflict of interest because defendant had charged counsel with providing ineffective assistance during a prior Hudson County representation. Judge Walter Barisonek conducted an evidentiary hearing on these contentions and denied defendant's PCR petition in a thorough oral decision. Defendant now appeals from the denial, and we affirm.

I.
We summarize only the facts necessary to understand the two contentions defendant urges on PCR. At approximately 1:00 p.m., two men committed an armed robbery at the offices of Luise Dairy Product in Elizabeth. Present were the Dairy's owner, office manager and secretary. Subsequently, the secretary identified defendant from a photo lineup of six photographs. She claimed to be "a hundred percent" sure that defendant was one of the robbers. Several days later, the office manager also positively identified defendant's photograph saying she was certain he was the man who held the gun during the robbery. The Dairy's owner, however, was unable to identify defendant from a photo lineup. Indeed, while the owner identified defendant in court as the perpetrator, the day before the owner initially identified defendant's attorney as the robber. He then changed his identification and pointed to defendant as the perpetrator because of his fuller face and height.
*84 Defendant claimed at his PCR hearing that he could not have committed this robbery because he had an appointment at University of Medicine/Dentistry Hospital and Clinic in Newark when the robbery occurred. Defendant testified that he arrived at the hospital at 10:00 a.m. and saw a doctor around 11:00-11:30 a.m. After the appointment, defendant claimed he ate lunch with Eleanor Hannah (now deceased) and his "common-law wife" Lorraine Drisco. At about 1:30 p.m. defendant and his "wife" left the hospital, took a bus home, and arrived in Elizabeth around 2:30 p.m.
After initially being represented by attorneys from the public defender's office, defendant retained counsel for the two armed robbery cases pending against him, one in Hudson County and the other in Union County, which is the matter at issue in this appeal. Retained counsel had grown up with defendant in Elizabeth and had known defendant and his family for many years. Counsel described his relationship with defendant as "friendly."
Defendant was convicted in Hudson County and shortly thereafter, just prior to his Union County trial, defendant filed a motion seeking a new trial alleging that trial counsel rendered ineffective assistance in the Hudson County case. Specifically, defendant claimed that counsel had "sold him out" to the prosecutor.
After trial counsel learned of the ineffective assistance claim that defendant was pressing against him, counsel discussed the matter with defendant. Counsel was not upset by the ineffective assistance allegation but was quite upset about being charged with selling defendant out. Counsel told defendant that if he wanted he could fire him. Counsel said "I don't have to represent you in Union County, ... just fire me and it's over." Defendant admitted that he "had words with" counsel but he never fired him from the Union County case and never made a motion before or during trial to have counsel relieved.

II.
We start by recognizing that every criminal defendant is guaranteed effective assistance of counsel. Strickland v. Washington, 466 U.S. 668, 685-86, 104 S.Ct. 2052, 2062-63, 80 L.Ed.2d 674, 692 (1984). To establish a prima facie case of ineffective assistance, defendant must demonstrate two factors: first, that defense counsel's performance was deficient; and second, that there exists "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694, 104 S.Ct. at 2068, 80 L.Ed.2d at 698; State v. Fritz, 105 N.J. 42, 58, 519 A.2d 336 (1987).
Prejudice is not presumed. State v. Fritz, supra, 105 N.J. at 63, 519 A.2d 336. A defendant must demonstrate "how specific errors of counsel undermined the reliability" of the proceeding. U.S. v. Cronic, 466 U.S. 648, 659 n. 26, 104 S.Ct. 2039, 2047 n. 26, 80 L.Ed.2d 657, 668 n. 26 (1984). Moreover, any claimed errors of counsel must amount to more than mere tactical strategy. Strickland, supra, 466 U.S. at 689, 104 S.Ct. at 2065, 80 L.Ed.2d at 694-95. Adequate assistance of counsel is measured by a standard of "`reasonable competence'." State v. Fritz, supra, 105 N.J. at 53, 519 A.2d 336. The standard does not demand "the best of attorneys," but rather requires that attorneys be not "so ineffective as to make the idea of a fair trial meaningless." State v. Davis, 116 N.J. 341, 351, 561 A.2d 1082 (1989); See State v. Fisher, 156 N.J. 494, 500, 721 A.2d 291 (1998).

A.
Here defendant alleges ineffective assistance because counsel failed to point *85 out that defendant's medical condition rendered him incapable of committing the crime and failed to present an alibi defense to the jury. Defendant acknowledged during cross-examination at the PCR hearing that his medical condition did not render him bedridden, and Judge Barisonek determined that counsel made a strategic decision not to present the alibi. Our review of the record leads us to conclude that the judge's determination was based on substantial credible evidence and deserves to be affirmed on that basis. State v. Locurto, 157 N.J. 463, 470-71, 724 A.2d 234 (1999).
Counsel determined that the alibi defense was weak because defendant could not offer a disinterested witness to verify defendant's whereabouts at the time of the robbery. The notice of alibi which was filed on defendant's behalf indicated that he was a patient at the hospital at the time of the robbery. This was clearly not so as defendant had been seen by a doctor earlier in the morning. In addition, the judge found that defendant never disclosed to counsel before trial the woman with whom he allegedly had lunch at the hospital after he had been seen by the doctor. Counsel also found defendant's "wife" to be less than credible given her close relationship to defendant and her resemblance to a person identified cashing the checks from the robbery. Finally, there was evidence that the decision not to present the alibi defense was mutually decided between counsel and defendant.
Counsel's fear that a weak alibi could cause more harm than good is the type of strategic decision that should not be second guessed on appeal. Accordingly, we agree with Judge Barisonek's conclusion that defendant has not established that counsel was ineffective for withholding the alibi defense from the jury.

B.
Second, defendant argues that because defense counsel had an actual conflict of interest that adversely affected counsel's performance, we must presume prejudice and reverse defendant's convictions. The PCR judge rejected this argument and found that there was no conflict between defendant and his counsel and even if a conflict did exist, it was waived.
Defendant's conflict of interest claim falls within his Federal and State constitutional right to the "assistance of counsel." State v. Bellucci, 81 N.J. 531, 538, 410 A.2d 666 (1980). Bellucci holds that under the State Constitution once a conflict between a private attorney and his or her client exists because the attorney also represents co-defendants, prejudice is presumed unless waived and any conviction must be reversed. Id. at 537-38, 410 A.2d 666. When dealing with such a conflict, defendant need not demonstrate that his or her claim also meets the Strickland and Fritz two-prong test used to evaluate ineffective assistance claims not involving conflicts. State v. Murray, 315 N.J.Super. 535, 544, 719 A.2d 190 (App.Div.1998), certif. denied, 172 N.J. 179, 796 A.2d 896 (2002).
The Federal Sixth Amendment conflict of interest test is more restrictive. Under Cuyler v. Sullivan, 446 U.S. 335, 348, 100 S.Ct. 1708, 1718, 64 L.Ed.2d 333, 346-47 (1980), to establish a Sixth Amendment violation, without objecting at trial, defendant must demonstrate that an actual conflict of interest adversely affected the defense lawyer's performance.
More recently, our Supreme Court considered whether business ties between attorneys representing two defendants created a conflict of interest that warranted the application of Bellucci's per se rule imputing prejudice, or whether the ties *86 amounted only to potential conflicts of interest that required an evaluation of the likelihood of prejudice before reversing the defendants' convictions. In State v. Norman, 151 N.J. 5, 10-11, 697 A.2d 511 (1997), the Court explained that Bellucci created "a two-tier system for evaluating conflict-of-interest claims." Id. at 24, 697 A.2d 511. Under the first tier, "[i]f a private attorney, or any lawyer associated with that attorney, is involved in simultaneous dual representations of codefendants, a per se conflict arises, and prejudice will be presumed, absent a valid waiver." Id. at 24-25, 697 A.2d 511. "Otherwise," under the second tier, "the potential or actual conflict of interest must be evaluated and, if significant, a great likelihood of prejudice must be shown in that particular case to establish constitutionally defective representation of counsel." Id. at 25, 697 A.2d 511 (citing State v. Bell, 90 N.J. 163, 171, 447 A.2d 525 (1982)).
New Jersey's constitutional standard thus provides broader protection against conflicts than does the Federal Constitution. Ibid. (citing State v. Sanchez, 129 N.J. 261, 274-75, 609 A.2d 400 (1992)). The Federal Sixth Amendment protection requires a defendant, who has not objected at trial, to show that counsel's conflict constituted an actual conflict that adversely affected counsel's performance before reversal will occur. Cuyler v. Sullivan, supra, 446 U.S. at 348, 100 S.Ct. at 1718, 64 L.Ed.2d at 346-47. Under our State constitution, when considering a potential conflict that does not involve multiple representations, we evaluate the potential or actual conflict to determine if there is a "great likelihood of prejudice." Norman, supra, 151 N.J. at 25, 697 A.2d 511. If a great likelihood of prejudice is found, then we presume that actual prejudice has resulted in constitutionally defective representation.
It is under these principles that we analyze defendant's claim and conclude that defendant has failed to satisfy both the State and Federal standards. We first recognize that effective assistance for a particular defendant becomes more problematic in multiple representations than in most other conflict situations. "A defense attorney's representation must be `untrammeled and unimpaired,' his loyalty undivided." Bellucci, supra, 81 N.J. at 538, 410 A.2d 666 (quoting Glasser v. United States, 315 U.S. 60, 70, 62 S.Ct. 457, 465, 86 L.Ed. 680, 699 (1942)). Under dual or multiple representations, counsel's duty to one client may collide with counsel's duty to other clients, creating difficult choices that often impair effective representation.
Here, we do not deal with multiple or dual representations, or the problems of divided loyalties. Instead we consider defendant's allegation that a conflict of interest was caused because defendant had previously charged trial counsel with ineffectiveness. In such a case, we decline to apply the per se portion or the first tier of Bellucci and proceed into the second tier to determine the nature of the conflict and the likelihood of prejudice that may have been created.
Not all conflicts of interest are suited for Bellucci's per se rule. See State v. Sheika, 337 N.J.Super. 228, 246, 766 A.2d 1151 (App.Div.), certif. denied, 169 N.J. 609, 782 A.2d 427 (2001) (where we did not apply the per se Bellucci rule to evaluate the conflict caused when trial counsel's daughter was an assistant prosecutor from the county office prosecuting defendant); State v. Pych, 213 N.J.Super. 446, 453, 517 A.2d 871 (App.Div.1986) (where we found no constitutional impairment where counsel represented defendant while counsel was under indictment); see also Beets v. Scott, 65 F.3d 1258, 1265 (5th Cir.1995), cert. denied, 517 U.S. 1157, 116 S.Ct. 1547, *87 134 L.Ed.2d 650 (1996) (where the federal court applied Strickland to address attorney conflicts outside the multiple or serial client context).
We do agree, however, that conflict in a later proceeding involving the same attorney is possible when the defense attorney has been previously charged with ineffective assistance by the same client. Depending on the particular charges and the circumstances present, counsel could develop personal animosity toward defendant thus compromising his or her ability to defend the case effectively. Therefore, a potential conflict is present.
Trial counsel, as does this court, however, recognizes that criminal defendants file ineffective assistance claims routinely. Such challenges are "commonplace." United States v. Moree, 220 F.3d 65, 71 (2nd Cir.2000). An ineffectiveness claim is different from a situation where defendant contends the lawyer's representation violated ethical responsibilities, as occurred in Douglas v. U.S., 488 A.2d 121, 126 (D.C.1985). Unlike an ethical complaint, no process issues against the lawyer when ineffective representation is charged, and the lawyer's adversary is not the client. Ibid. Every charge of ineffective assistance, therefore, does not automatically create an actual adversarial relationship between client and lawyer.
While multiple representation situations often result in conflicting duties between and among clients, other types of conflicts can involve a spectrum of situations from mere potential conflicts to outright criminal misdeeds. Beets, supra, 65 F.3d at 1270. For example, an attorney's conflict arising from self-dealing caused by a fee payment dispute or security for fees, business dealings with the client, or unauthorized disclosure of information, may or may not prejudice the representation provided the client. Ibid. Many such potential conflicts will not warrant a presumption of prejudice with the consequent automatic reversal of any criminal conviction suffered by the client. Instead, the gravity of the conflict and the resulting impact upon the representation must be analyzed.
Here, defendant's filing of the ineffectiveness claim in the Hudson County case did not prejudice defendant's Union County case. While counsel was upset by the specific charge brought in Hudson County against him, nothing suggests that counsel acted in his own self interest or in any capacity other than in defendant's best interests when he tried defendant's Union County case. Except for the failure to present the alibi defense, which we have found not to constitute ineffective assistance, defendant had no complaints about counsel's performance. There is also no other indication in the record that counsel harbored such resentment from the Hudson County charges that his representation in the Union County case was adversely affected.
Moreover, in the instant case, defendant was given the option of firing counsel, but chose to continue his services. While it would have been preferred to bring the claimed conflict to the attention of the trial judge, Sheika, supra, 337 N.J.Super. at 248, 766 A.2d 1151, the failure to do so in this case was not fatal because we have found that the representation provided was not adversely affected by the potential conflict. We point out, however, that in the future this type of conflict and any waiver should be placed on the record. Defendants may surrender their right to independent counsel, but trial courts "should ensure that the waiver is voluntarily and intelligently made on the record." Ibid. (citing Bellucci, supra, 81 *88 N.J. at 544, 410 A.2d 666 and State v. Land, 73 N.J. 24, 34, 372 A.2d 297 (1977)).
When an actual conflict of interest is present, a court may reject defendant's waiver. State v. Rivera, 232 N.J.Super. 165, 179, 556 A.2d 1227 (App.Div.1989). This was not a case, however, where the potential conflict materialized into an actual conflict requiring counsel to choose between self-interest and his duty to defendant; counsel continued to advance only defendant's interests and defendant suffered no prejudice from the claimed conflict. Consequently, under both Norman, supra, 151 N.J. at 5, 697 A.2d 511, and Cuyler v. Sullivan, supra, 446 U.S. at 335, 100 S.Ct. at 1708, 64 L.Ed.2d at 333, we find no violation of defendant's right to effective assistance of counsel under either the State or Federal constitutions.
Affirmed.
NOTES
[1] Judge Skillman did not participate in oral argument, but has, with the consent of counsel, joined in this opinion. R. 2:13-2(b).