NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R. 1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-0013-16T2

STATE OF NEW JERSEY,

 Plaintiff-Respondent,

v.

WILLIE E. SHUMAN, JR., a/k/a
PUMPKIN SHUMAN,

 Defendant-Appellant.

__________________________________________________________

 Submitted September 27, 2017 – Decided October 12, 2017

 Before Judges Nugent and Geiger.

 On appeal from Superior Court of New Jersey,
 Law Division, Mercer County, Indictment No.
 08-06-0597.

 Joseph E. Krakora, Public Defender, attorney
 for appellant (Karen Ann Lodeserto, Designated
 Counsel, on the brief).

 Angelo J. Onofri, Mercer County Prosecutor,
 attorney for respondent (Joseph Paravecchia,
 Assistant Prosecutor, on the brief).

PER CURIAM
 Defendant Willie Shuman, Jr. appeals from the April 20, 2016

order of the trial court denying his petition for post-conviction

relief (PCR) without an evidentiary hearing. We affirm.

 A Mercer County grand jury charged defendant and co-

defendants Michael Smith, Dennis Merritt (Dennis),1 and Melanie

Merritt (Melanie) with first-degree attempted murder, N.J.S.A.

2C:5-1 and N.J.S.A. 2C:11-3 (count one); second-degree aggravated

assault, N.J.S.A. 2C:12-1(b)(1) (count two); third-degree

aggravated assault, N.J.S.A. 2C:12-1(b)(2) (count three); fourth-

degree aggravated assault, N.J.S.A. 2C:12-1(b)(4) (count four);

second-degree possession of a handgun for an unlawful purpose,

N.J.S.A. 2C:39-4(a) (count five); third-degree unlawful possession

of a handgun, N.J.S.A. 2C:39-5(b) (count six); and first-degree

conspiracy to commit murder, N.J.S.A. 2C:5-2 and N.J.S.A. 2C:11-3

(count seven).

 Defendant moved to suppress the videotaped statements he gave

to the police after he was arrested. A Miranda2 hearing was

conducted on July 23, 2009. Detective Matthew Kemp of the West

Windsor Police Department testified on behalf of the State at the

1
 Because two co-defendants share the same surname, we use their
first names to avoid confusion. We intend no disrespect in doing
so.
2
 Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d
694 (1966).

 2 A-0013-16T2
hearing. Defendant did not testify or call any witnesses at the

hearing. The portions of the videotapes regarding the Miranda

warnings defendant received and other aspects of the voluntariness

of his statements were played during the hearing.

 In a detailed oral decision rendered on November 4, 2009, the

motion judge noted that the defendant read the Miranda warning

form aloud and signed the form before each statement was given.

The judge found that defendant understood his rights and knowingly

waived them. She further found that defendant never asked to stop

the interviews and never asked for an attorney. The judge also

found that no promises were made to defendant regarding his bail

or seeing his family. When defendant asked for certain assurances

the detectives told him they could not do that. At one point the

detective told defendant: "We can't promise you anything."

 The second interview was initiated by defendant's own request

to speak to the investigating detective. Defendant was given

breaks and a cigarette during the interviews. The police did not

intimidate or threaten defendant. For these reasons, the motion

judge held that the statements were given voluntarily and were

admissible at trial.

 Defendant was tried separately. Following a five-day trial,

the jury acquitted defendant of conspiracy to commit murder (count

seven) but convicted him of the lesser-included offense of second-

 3 A-0013-16T2
degree conspiracy to commit aggravated assault and counts one

through six of the indictment.

 The facts underlying defendant's convictions are set forth

in our opinion in his direct appeal. Therefore, we review only

the facts pertinent to the issues raised.

 On December 15, 2007, Chaz Mathis helped
 Melanie and her husband Dennis move their
 apartment furnishings from Trenton into a
 storage unit in Ewing, New Jersey. Mathis
 transported the couple's belongings in his
 van.

 Five days later, on December 20, 2007,
 Melanie called Mathis and accused him of
 stealing a television and a gold chain during
 the move. Mathis denied the allegations. Later
 that day, Mathis was approached outside his
 Trenton boarding house by Smith. Smith
 questioned Mathis about the items, and Mathis
 again denied the allegations. Mathis invited
 Smith to inspect his bedroom for the items,
 but Smith said "I believe you" and left.

 Following his conversation with Smith,
 Mathis went to his second-floor bedroom to
 take a nap. About forty-five minutes later,
 he heard his name being called and woke up to
 see a man in the doorway, holding a gun. Mathis
 tried "to roll out of the way," but the gunman
 shot him four times.

 . . . .

 Detective Matthew Kemp of the West
 Windsor Township Police Department
 investigated the shooting. When Kemp spoke
 with Mathis at the hospital, Mathis said he
 believed Dennis was involved, and that a
 "black male, very big, tall, six foot four,

 4 A-0013-16T2
[weighing] 300 pounds" was involved. This
matched the description of Smith.

 Kemp met with Smith on December 26, 2007.
According to Smith, he only gave Kemp "a
little bit" of information about the incident
at that time. However, when they met a second
time on January 2, 2008, Smith provided Kemp
with a formal statement, which explained what
happened.

 On January 17, 2008, Smith was arrested
and charged with attempted murder and other
offenses. The following day, while in custody,
Smith asked to speak with Kemp. During that
meeting, Smith identified defendant as the
shooter. Defendant was arrested on January 23,
2008.

 When Kemp interviewed defendant on
January 24, 2008, he confessed to shooting
Mathis and provided the police with a
videotaped statement, which was admitted into
evidence at defendant's trial. In his
statement, defendant confirmed that Smith led
him to Mathis' bedroom. Defendant also
admitted that he pushed open the unlocked door
to Mathis' room, saw Mathis "on the bed," and
"squeezed [the gun] four times."

 Neither Dennis nor Melanie testified at
trial. However, Smith testified for the State,
and he made an in-court identification of
defendant as the shooter. . . .

 Defendant testified on his own behalf.
On direct examination, defendant denied he was
involved in the shooting. Defendant admitted
he told Kemp he shot Mathis, but defendant
claimed he did so because he "felt it was the
only way [he] was going to get home to [his]
fiancée and kids."

 On cross-examination, defendant conceded
he had signed a Miranda form and a waiver of

 5 A-0013-16T2
 rights prior to his videotaped statement.
 Nevertheless, he testified his confession was
 a lie[.]

 [State v. Shuman, No. A-0859-10 (App. Div.
 March 11, 2013) (slip op. at 3-7), certif.
 denied, 217 N.J. 52 (2014).]

 At sentencing, the court merged counts two, three, and four

into count one and sentenced defendant to a seventeen-and-one-

half-year prison term subject to the eighty-five percent period

of parole ineligibility mandated by the No Early Release Act

(NERA), N.J.S.A. 2C:43-7.2. Defendant received concurrent

sentences on counts five and six. Appropriate penalties, fees,

and assessments were also imposed.

 On direct appeal, defendant raised the following arguments:

(1) the admission of testimonial hearsay of non-testifying alleged

accomplices violated defendant's constitutional right to

confrontation; (2) the conviction for possession of a weapon for

an unlawful purpose (count five) should have been merged into

count one (attempted murder); and (3) defendant's sentence was

manifestly excessive. Shuman, supra, (slip op. at 3). Notably,

defendant did not argue that the denial of his suppression motion

was error.

 We concluded that defendant received a fair trial and an

appropriate sentence. We affirmed the convictions and sentence

but remanded for entry of an amended judgment of conviction merging

 6 A-0013-16T2
count five into count one. On March 12, 2013, an amended judgment

of conviction was entered. Defendant's petition for certification

was denied by the Supreme Court on January 14, 2014. State v.

Shuman, 217 N.J. 52 (2014).

 Defendant filed a timely pro se PCR petition that was

supplemented with a brief by appointed PCR counsel. Through

counsel, defendant raised the following issues:

 POINT I

 DEFENDANT WAS DEPRIVED OF HIS CONSTITUTIONAL
 RIGHTS TO THE EFFECTIVE ASSISTANCE OF TRIAL
 COUNSEL, DUE PROCESS OF THE LAW AND OF HIS
 RIGHT TO A FAIR TRIAL SINCE TRIAL COUNSEL
 FAILED TO CALL THE DEFENDANT TO TESTIFY AT THE
 MIRANDA HEARING AND SUCH FAILURE RESULTED IN
 THE ADMISSION OF DEFENDANT'S INCULPATORY
 STATEMENT.

 POINT II

 DEFENDANT WAS DEPRIVED OF HIS CONSTITUTIONAL
 RIGHTS TO THE EFFECTIVE ASSISTANCE OF TRIAL
 COUNSEL, DUE PROCESS OF THE LAW AND OF HIS
 RIGHT TO A FAIR TRIAL SINCE TRIAL COUNSEL
 FAILED TO PRESENT AN ALIBI DEFENSE.

 POINT III

 DEFENDANT WAS DEPRIVED OF HIS CONSTITUTIONAL
 RIGHTS TO THE EFFECTIVE ASSISTANCE OF TRIAL
 COUNSEL, DUE PROCESS OF THE LAW AND OF HIS
 RIGHT TO A FAIR TRIAL SINCE TRIAL COUNSEL
 FAILED TO ARGUE THAT MICHAEL SMITH WAS UNABLE
 TO IDENTIFY THE DEFENDANT AS THE SHOOTER.

 7 A-0013-16T2
 POINT IV

 DEFENDANT WAS DEPRIVED OF HIS CONSTITUTIONAL
 RIGHTS TO THE EFFECTIVE ASSISTANCE OF TRIAL
 COUNSEL, DUE PROCESS OF THE LAW AND OF HIS
 RIGHT TO A FAIR TRIAL SINCE TRIAL COUNSEL
 FAILED TO ARGUE THAT A FAMILY COURT JUDGE
 IMPERMISSIBLY ISSUED THE ARREST WARRANT.

 Defendant claims that at the time of the shooting he was with

a man named "Orlando" at Orlando's grandmother's house, located

at Randle and Elm Streets in Trenton, New Jersey. He argues that

even though he shared this information with trial counsel, his

counsel was ineffective by failing to investigate this alibi and

present it as a defense at trial.

 Defendant did not provide the full name of, or identifying

information for, the alleged alibi witness to his trial counsel

or the PCR court. Nor did he provide the specific facts that an

investigation would have revealed. His PCR application did not

include any affidavits or certifications regarding the alibi from

any alibi witness.

 The State submitted a certification of defendant's trial

counsel in opposition to defendant's PCR claims. In his

certification, trial counsel stated: "At one point he briefly

remarked that he was 'probably' at a friend's grandmother's house

at the time of the shooting. He indicated he would get her name

and address. I do not believe I was ever given her name." Trial

 8 A-0013-16T2
counsel then stated: "The fact that this could be a weak alibi

was certainly a consideration; however there were other factors

that questioned the value and credibility of the 'alibi[.]'" Those

factors included: (1) defendant's failure to raise the alibi

shortly after arrest; (2) the alibi was not supported by

independent objective evidence; (3) defendant gave a statement

admitting he was present and involved in the shooting incident;

and (4) defendant rarely mentioned his possible presence elsewhere

during conversations with trial counsel. Taking these factors

into account, trial counsel concluded that defendant's unsupported

suggestion that he may have been at someone's residence at the

time of the incident "was not a provable alibi that could have

altered the outcome of the case."

 Defendant did not testify at the Miranda hearing. He claims

that he would have testified that he only gave the incriminating

statement to the police because they promised him that he could

go home to his family. The transcripts of the videotaped

statements are devoid of any such promises. Moreover, as noted

by the PCR judge,

 the facts surrounding the statements made to
 police by the Petitioner do not support his
 claim. On January 23, 2008, Detective Kemp
 placed the Petitioner under arrest.
 Immediately following his arrest, Petitioner
 waived his Miranda rights and spoke to the
 detective investigating the shooting. The

 9 A-0013-16T2
 Petitioner stated he had no information
 regarding the shooting. On the following day,
 January 24, 2008, the Petitioner requested to
 speak to Detective Kemp about the shooting.
 Detective Kemp did not initiate the second
 interview. During the second interview, after
 waiving his Miranda rights, the Petitioner
 admitted to shooting Mathis at the request of
 [Dennis] Merritt and [Melanie] Gerald.

 [(citations omitted).]

 The PCR was heard by Judge Robert C. Billmeier, who issued a

seventeen-page written decision denying defendant's petition

without conducting an evidentiary hearing. The judge found that

defendant failed to establish a prima facie case of ineffective

assistance of counsel, concluding that: (1) defendant failed to

show that trial counsel's representation fell below an objective

standard of reasonableness; (2) defendant failed to demonstrate a

reasonable probability that, but for trial counsel's alleged

unprofessional errors, the outcome of the trial would have been

different; (3) trial counsel was not ineffective by failing to

argue in summation that Smith did not see defendant actually shoot

the victim; and (4) trial counsel was not ineffective by failing

to argue that a Family Law judge impermissibly issued his arrest

warrant, since that claim was legally baseless. Defendant appeals

from that ruling.

 In his present appeal, defendant raises the following

arguments:

 10 A-0013-16T2
 POINT ONE

 A. DEFENDANT SHOULD BE ENTITLED TO AN
 EVIDENTIARY HEARING BECAUSE HIS TRIAL ATTORNEY
 WAS INEFFECTIVE IN FAILING TO PRESENT AN ALIBI
 DEFENSE.

 B. DEFENDANT SHOULD BE ENTITLED TO AN
 EVIDENTIARY HEARING BECAUSE HIS TRIAL ATTORNEY
 WAS INEFFECTIVE IN FAILING TO CALL HIM TO
 TESTIFY AT HIS MIRANDA HEARING.

 We affirm substantially for the reasons stated by Judge

Billmeier in his thorough and well-reasoned written decision. We

add only the following comments.

 PCR petitioners are not automatically entitled to an

evidentiary hearing. State v. Cummings, 321 N.J. Super. 154, 170

(App. Div.), certif. denied, 162 N.J. 199 (1999). Rather,

 [a] defendant shall be entitled to an
 evidentiary hearing only upon the
 establishment of a prima facie case in support
 of post-conviction relief, a determination by
 the court that there are material issues of
 disputed fact that cannot be resolved by
 reference to the existing record, and a
 determination that an evidentiary hearing is
 necessary to resolve the claims for relief.

 [R. 3:22-10(b).]

 To establish a prima facie claim of ineffectiveness of

counsel, the defendant

 must satisfy two prongs. First, he must
 demonstrate that counsel made errors so
 serious that counsel was not functioning as
 the counsel guaranteed the defendant by the
 Sixth Amendment. An attorney's representation

 11 A-0013-16T2
 is deficient when it [falls] below an
 objective standard of reasonableness.

 Second, a defendant must show that the
 deficient performance prejudiced the defense.
 A defendant will be prejudiced when counsel's
 errors are sufficiently serious to deny him a
 fair trial. The prejudice standard is met if
 there is a reasonable probability that, but
 for counsel's unprofessional errors, the
 result of the proceeding would have been
 different. A reasonable probability simply
 means a probability sufficient to undermine
 confidence in the outcome of the proceeding.

 [State v. O'Neil, 219 N.J. 598, 611 (2014)
 (citations omitted).]

 "A court shall not grant an evidentiary hearing . . . if the

defendant's allegations are too vague, conclusionary or

speculative[.]" R. 3:22-10(d); see State v. Marshall, 148 N.J.

89, 158, cert. denied, 522 U.S. 850, 118 S. Ct. 140, 139 L. Ed.2d

88 (1997). "Rather, defendant must allege specific facts and

evidence supporting his allegations." State v. Porter, 216 N.J.

343, 355 (2013). As we explained in Cummings:

 [I]n order to establish a prima facie claim,
 a petitioner must do more than make bald
 assertions that he was denied the effective
 assistance of counsel. He must allege facts
 sufficient to demonstrate counsel's alleged
 substandard performance. Thus, when a
 petitioner claims his trial attorney
 inadequately investigated his case, he must
 assert the facts that an investigation would
 have revealed, supported by affidavits or
 certifications based upon the personal
 knowledge of the affiant or the person making
 the certification.

 12 A-0013-16T2
 [Cummings, supra, 321 N.J. Super. at 170.]

 We review a judge's decision to deny a PCR petition without

an evidentiary hearing for abuse of discretion. State v. Preciose,

129 N.J. 451, 462 (1992).

 Defendant claims that his trial counsel was ineffective by

inadequately investigating his alibi defense and not presenting

it at trial. We disagree.

 Rule 3:22-10(c) requires the factual assertions in support

of defendant's alibi defense be made by affidavit or certification

based on personal knowledge in order to secure an evidential

hearing. State v. Jones, 219 N.J. 298, 312 (2014); Porter, supra,

216 N.J. at 355. Defendant did not satisfy this requirement. As

noted by Judge Billmeier, defendant did not provide the full name

of, or identifying information for, the alleged alibi witness. He

did not assert specific facts that an investigation would have

revealed and failed to submit any affidavits or certifications

from any witness attesting to the alibi. Moreover, the alibi is

contradicted by defendant's own statement to the police. This led

trial counsel to conclude that the alibi defense was too weak to

pursue at trial.

 "[A]ny claimed errors of counsel must amount to more than

mere tactical strategy." State v. Drisco, 355 N.J. Super. 283,

 13 A-0013-16T2
290 (App. Div. 2002), certif. denied, 178 N.J. 252 (2003) (citing

Strickland v. Washington, 466 U.S. 668, 689, 104 S. Ct. 2052,

2065, 80 L. Ed. 2d 674, 694-95 (1984)). A trial counsel's

strategic decision to withhold a weak alibi defense does not

constitute ineffective assistance of counsel. See id. at 290-91

(explaining that a trial counsel's fear that a weak alibi defense

could cause more harm than good is the type of strategic decision

that should not be second guessed on appeal).

 For the reasons recounted in his certification, trial counsel

reasonably concluded that defendant's unsupported suggestion that

he may have been at someone's residence at the time of the incident

"was not a provable alibi that could have altered the outcome of

the case." Our review of the record leads us to conclude that the

judge's determination that trial counsel made a strategic decision

not to present the alibi defense was based on substantial credible

evidence in the record. Moreover, defendant has not shown that

there is a reasonable likelihood that the alibi defense would have

been successful if properly investigated and presented at trial.

 Defendant also argues that his trial counsel was ineffective

by failing to have him testify at the Miranda hearing, resulting

in the admission of his inculpatory statement in which he confessed

to shooting the victim. Defendant claims he would have testified

 14 A-0013-16T2
that he only gave the statement to police because they promised

him he could go home to his family if he did so.

 Deciding whether to call defendant as a witness at the Miranda

hearing is one of the most difficult strategic decisions that

trial counsel must confront. See State v. Arthur, 184 N.J. 307,

320 (2005).

 A trial attorney must consider what testimony
 a witness can be expected to give, whether the
 witness's testimony will be subject to
 effective impeachment by prior inconsistent
 statements or other means, whether the witness
 is likely to contradict the testimony of other
 witnesses the attorney intends to present and
 thereby undermine their credibility, whether
 the trier of fact is likely to find the witness
 credible, and a variety of other tangible and
 intangible factors.

 [Id. at 320-21.]

Our review of such decisions is highly deferential. Id. at 321.

 In order to prevail on this claim, defendant must show that

the failure to call him as a witness was a serious professional

error, and that had he testified during the hearing the effect

would have been the suppression of the statement and a different

trial outcome. Defendant failed to satisfy either prong.

 Defendant has not shown that his testimony at the Miranda

hearing would have resulted in the suppression of his statement

and a different trial outcome. His bare allegation that he

confessed to the police only because he was promised that he would

 15 A-0013-16T2
be able to reunite with his family is contradicted by the record.

The decision to not have him testify at the hearing appears to

have been a reasonable, strategic decision made by an experienced

attorney, not a serious professional error.

 In summary, we discern no abuse of discretion by the PCR

court. Judge Billmeier correctly concluded that defendant did not

establish a prima facie case of ineffective assistance of counsel

and was not entitled to an evidentiary hearing.

 The remaining issues raised by defendant lack sufficient

merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

 Affirmed.

 16 A-0013-16T2