**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2005-16T2

STATE OF NEW JERSEY,

      Plaintiff-Respondent,

v.

KAREEM PRUNTY,

      Defendant-Appellant.

_____

        Argued November 27, 2018 – Decided January 11, 2019

        Before Judges Suter and Geiger.

        On appeal from Superior Court of New Jersey, Law Division, Union County, Indictment No. 09-10-0958.

        Robin Kay Lord argued the cause for appellant.

        Milton S. Leibowitz, Special Deputy Attorney General/Acting Assistant Prosecutor, argued the cause for respondent (Michael A. Monahan, Acting Union County Prosecutor, attorney; Izabella M. Wozniak, Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Kareem Prunty appeals the denial of his petition for post-conviction relief (PCR) without an evidentiary hearing. We affirm.

In October 2009, defendant was indicted and charged with: first-degree murder, N.J.S.A. 2C:11-3(a); third-degree possession of a weapon without a permit, N.J.S.A. 2C:39-5(b); and second-degree possession of a handgun for unlawful purposes, N.J.S.A. 2C:39-4(a). On March 16, 2011, at the conclusion of a fourteen-day trial, which included three days of jury deliberations, defendant was convicted as charged.

Defendant was sentenced to a forty-eight-year prison term, subject to an eighty-five percent period of parole ineligibility pursuant to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2, on the murder conviction, and concurrent five-year prison terms on the other convictions.

We recounted the relevant facts and procedural history in our opinion on direct appeal. State v. Prunty, No. A-1365-11 (App. Div. Jan. 28, 2014) (slip op. at 1-2, 4-24). They need not be repeated at length. We briefly discuss the facts necessary to address defendant's current claims.

Defendant was convicted of murder and related weapons offenses for the April 17, 2017 shooting death of Gregory Fils-Aime. On the night of the shooting, Michael Whetstone and Fils-Aime entered Mike's Tavern, located on

Roselle Street in Linden, where they sat at the bar, talked, and drank. As the night wore on, Fils-Aime became intoxicated. He was described by bartenders at the tavern as "ill mannered" and "a very arrogant person" who was loud and obnoxious. Whetstone and Fils-Aime were seen arguing outside the tavern. They then walked down Roselle Street. Fils-Aime was shot and killed minutes later.

The State contended Fils-Aime first encountered defendant inside Mike's Tavern. The State introduced video footage from surveillance cameras inside the tavern, demonstrating that two African-American men, one of them defendant, entered the tavern and sat across the bar from Fils-Aime and Whetstone. Shortly after defendant and his companion arrived, Fils-Aime started "mouthing off." Defendant and his companion reacted to Fils-Aime's remarks. Fils-Aime eventually approached the two men and had a conversation. At one point Fils-Aime was told, "Get away from me. Go back over there with your friend." According to a bartender, the voices grew gradually louder until they were shouting.

According to another customer at the bar, after defendant motioned to his waistline, Fils-Aime said something like, "Oh, okay," or "Oh, it's like that." Whetstone said, "I'm outta here," and got up and left. Whetstone was angry with

3

Fils-Aime and wanted to leave because Fils-Aime was "talking gangsta stuff" and he was "not with that." Fils-Aime had a drink to finish, so Whetstone exited the tavern and waited for Fils-Aime outside. Defendant and his companion also exited the tavern. Whetstone apologized to them for Fils-Aime's behavior. Defendant and his companion got in their vehicles and left, with defendant driving a gold minivan. They both drove up Roselle Street toward a convenience store.

Whetstone wanted to leave and Fils-Aime wanted to stay, but they eventually left the tavern premises together and walked on Roselle Street in the same direction the minivans had taken. As Whetstone and Fils-Aime crossed the intersection of Roselle Street and Cleveland Avenue, a minivan pulled up. Fils-Aime approached the vehicle and was shot. Whetstone heard the gun shots and ran off. The minivan also left quickly after the shots were fired. Police were dispatched to a report of gunshots being fired in the vicinity of Roselle Street and Cleveland Avenue and found Fils-Aime's dead body on the lawn of an apartment building. An autopsy revealed Fils-Aime was struck by three bullets. The medical examiner determined the cause of death was multiple gunshot wounds and the manner of death was homicide.

The police undertook a two-year investigation. Within twenty-four hours of the crime, police obtained surveillance video from the tavern and were able to identify defendant as being in the tavern on the night of the shooting. Prunty, slip op. at 23. Within five days of the shooting, police confirmed a gold Ford Windstar minivan matching the witness description was registered in defendant's name but efforts to locate the minivan were unsuccessful. Id. at 24. The investigation initially focused on Whetstone, but by May 2007 police no longer viewed Whetstone as a suspect. Id. at 23-24. When the unsolved homicide came under greater scrutiny two years later, police obtained a court order to have defendant produced in front of the surveillance cameras at Mike's Tavern under the same conditions as the night of the shooting. Id. at 24.

At trial, the State theorized Fils-Aime argued with defendant, causing defendant and his companion to leave the tavern and wait in defendant's minivan, from which defendant shot and killed Fils-Aime while stopped at the intersection of Cleveland Avenue and Roselle Street.

During the trial, the defense conceded defendant was present in the tavern on the night Fils-Aime was shot but maintained defendant did not have a significant argument or disagreement with Fils-Aime and did not shoot him. Instead, the defense contended Whetstone, who did not call the police to report

the shooting, was the likely shooter since he argued with Fils-Aime after they left the tavern, and was seen running from the area after the shooting.

The defense theorized defendant was not seriously considered a suspect in Fils-Aime's murder until he failed to cooperate as a material witness in a separate homicide case. In support of its theory, defense counsel noted defendant was not interviewed for more than two years after the homicide even though the police knew defendant was present in the tavern the night of the shooting.

On direct appeal, we affirmed defendant's conviction and rejected all of his arguments, including those regarding the admission of Michael Whetstone's videotaped statements; the admission of Detective Manochio's testimony that the review of the video created pursuant to the investigative detention order by unknown members of the Prosecutor's Office prompted the decision to charge defendant; the admission of Kathleen McCann's opinion testimony; and the admission of Elliot Brantley's statement to Detective Manochio following his trial testimony. The Supreme Court denied defendant's petition for certification. State v. Prunty, 219 N.J. 629 (2014).

On October 7, 2014, defendant filed a pro se PCR petition claiming ineffective assistance of trial counsel. Defendant raised the following grounds:

1) trial counsel failed to investigate, locate, and interview witnesses whose testimony would have resulted in a different verdict; 2) the prosecutor engaged in misconduct by failing to provide the 2007 grand jury transcript which would have advanced the defense of third-party guilt; 3) trial counsel failed to obtain the 2007 grand jury transcript prior to the commencement of trial; 4) counsel failed to properly advise defendant of the advantages and disadvantages of testifying at trial; 5) trial counsel failed to make timely objections during the trial; 6) trial counsel opened the door to inadmissible evidence; 7) trial counsel failed to object to the playing of Whetstone's videotaped interviews during her cross-examination; 8) trial counsel failed to request a Wade[1] hearing regarding his identification by detectives though he was not identified by any patron of Mike's Tavern; 9) trial counsel failed to object to the prosecutor's removal of every juror with a Muslim name; 10) the prosecutor's misrepresentation of physical evidence; 11) direct appeal counsel failed to advance meritorious claims; and 12) the cumulative effect of the errors complained of rendered the trial unfair.

Through appointed counsel, defendant claimed ineffective assistance of counsel, raising the following grounds before the PCR court: 1) trial counsel's

---

[1]  United States v. Wade, 388 U.S. 218 (1967).

concession defendant was in Mike's Tavern the night of the shooting; 2) failure to object to Rashad Gilliam's testimony; 3) failure to effectively challenge Kathleen McCann's testimony; 4) failure to move for a Wade hearing regarding Ann Marie Dampach's identification; 5) failure to object to Detective Johnston's testimony identifying defendant in the tavern's surveillance video; 6) failure to object to Detective Manochio's hearsay testimony that several non-testifying police officers had identified defendant in the investigative detention video; 7) failure to raise a constitutional challenge to the investigative detention video; 8) failure to object to the admission of Whetstone's videotaped statements; 9) failure to object to inadmissible testimony elicited in response to defendant's retaliation defense; 10) failure to pursue Jerry Candia as third-party guilt evidence; and 11) failure to object to prosecutorial misconduct. Defendant also claimed ineffective assistance of appellate counsel for failure to raise prosecutorial misconduct on appeal.

Following oral argument, the PCR judge issued a comprehensive, forty-six-page opinion and order denying the petition without an evidentiary hearing. With regard to defendant's argument that trial counsel was ineffective by conceding defendant's presence in the tavern and by not pursuing Jerry Candia as third-party guilt evidence, the PCR court noted the trial strategy was to pursue

a retaliation defense bolstered by a claim Whetstone was the shooter. As part of that strategy, trial counsel highlighted the fact law enforcement knew defendant was in the tavern the night of the shooting within days of the homicide, but never approached to interview him for over two years. Trial counsel claimed the State retaliated against defendant because of his non-cooperation in an unrelated homicide investigation. In addition, pursuit of Jerry Candia would have conflicted with the decision to pursue Whetstone as third-party evidence. The evidence against Whetstone was much stronger. The PCR court found defendant's allegations against Candia were mere bald assertions. The PCR court also found that witnesses and videos provided overwhelming evidence defendant was present in the tavern. For these reasons, the PCR court found trial counsel's tactical decision well thought out and strategically defensible.

As to trial counsel's failure to object to the testimony of assistant prosecutors Bruce Holmes and Ann Luvera, the PCR court noted Holmes testified defendant did not testify in the other case because the State could not locate him. The trial ended in a hung jury. The Appellate Division ruled the case could not be retried. This supported the defense theory. Luvera testified Fils-Aime's murder was given greater scrutiny after the homicide taskforce was

created and was directly responsive to defendant's retaliation claim. The PCR court found their testimony did not rise to the level of prosecutorial misconduct.

With regard to trial counsel not objecting to the admissibility of Whetstone's videotaped statements, the PCR court noted Whetstone gave four statements, two to the police and two to defense investigators. The statements were inconsistent with each other and with Whetstone's trial testimony. The statements were admissible as prior inconsistent statements. The PCR court found admission of the tapes supported the defense theory that Whetstone was the shooter and continually lied to protect himself.

As to trial counsel's failure to object to Manocchio's testimony that several non-testifying officers identified defendant in the investigative detention video, the PCR court noted this issue was raised on direct appeal with the appellate panel finding defendant had not shown the testimony was "of such a nature as to have been capable of producing an unjust result." The appellate panel found the testimony cumulative. The PCR court also found the testimony "was of no real effect" given defendant conceded he was in the tavern as part of his defense strategy and the State knew of his presence there within days of the shooting.

As to trial counsel's failure to review the surveillance video in preparation to effectively cross-examine McCann, the PCR court found the video was of

such poor quality "it shows nothing more than the defendant moving around in his seat." In addition, the court noted trial counsel objected there times during McCann's direct testimony. During cross-examination, trial counsel elicited favorable testimony effectively undermining and impeaching her testimony on direct, which trial counsel used during her summation.

As to the failure to request a <u>Wade</u> hearing challenging Dampach's eyewitness identification based on an impermissibly suggestive photo array, the PCR court found suppression of the identification would not change the outcome of the verdict since defendant conceded he was present in the tavern. In addition, other trial witnesses placed defendant in the tavern on the night in question.

As to trial counsel's failure to object to Johnston's testimony that defendant was the person depicted in the surveillance video, the PCR court noted the testimony established the police were aware defendant was in the tavern very early in the case, a fact crucial to the defense strategy.

This appeal followed. Defendant argues:

> POINT ONE
>
> DEFENDANT HAS, AT THE VERY LEAST, PRESENTED A PRIMA FACIE CASE OF INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL, ENTITLING HIM TO A REMAND FOR AN EVIDENTIARY HEARING ON HIS PETITION FOR POST-CONVICTION RELIEF.

I. Trial Counsel Was Ineffective in Conceding Defendant's Identity as One of the Men Present in the Bar Immediately Prior to the Shooting.

II. Trial Counsel Was Ineffective in Failing to Object to Rashan Gilliam's Testimony.

III. Trial Counsel Was Ineffective in Failing to View the April 17, 2007 Surveillance Video in Order to Effectively Challenge Kathleen McCann's Testimony at Trial.

IV. Trial Counsel Was Ineffective in Failing to Request a Wade Hearing to Challenge the Eyewitness Identification Made by Ann Marie Dampach.

V. Trial Counsel was Ineffective in Failing to Object to Detective Johnston's Testimony that Defendant was the Man Depicted in the April 17, 2007, Surveillance Video.

VI. Trial Counsel was Ineffective in Failing to Object to Hearsay Testimony that Several Non-Testifying Police Officers Had Identified Defendant in the May 15, 2009 Investigative Detention Video.

VII. Trial Counsel Was Ineffective in Failing to Raise a Constitutional Challenge to the May 15, 2009 Video that was Obtained Pursuant to an Investigative Detention Order.

VIII. Trial Counsel Was Ineffective in Conceding to the Admissibility of Whetstone's Videotaped Statements.

IX. Trial Counsel Was Ineffective in Failing to Object to Inadmissible Testimony Introduced in Response to Counsel's Retaliation Defense.

X. Trial Counsel Was Ineffective in Failing to Pursue Jerry Candia as Third Party Evidence.

XI. Trial Counsel was Ineffective in Failing to Object to Numerous Instances of Prosecutorial Misconduct, and Appellate Counsel was Ineffective in Failing to Raise this Issue on Direct Appeal.

POINT TWO

THE PCR COURT ERRED IN REVIEWING VIDEO EVIDENCE BUT REFUSING TO GRANT A FULL EVIDENTIARY HEARING. (Not Raised Below).

After a careful review of the arguments in light of the record and the applicable principles of law, we are unpersuaded by these arguments and affirm substantially for the reasons stated by the PCR judge in his thorough and well-reasoned written opinion. We add the following comments.

PCR petitioners are not automatically entitled to an evidentiary hearing. State v. Cummings, 321 N.J. Super. 154, 170 (App. Div. 1999); R. 3:22-10(b). A PCR court need not grant an evidentiary hearing unless "a defendant has presented a prima facie case in support of PCR." State v. Jones, 219 N.J. 298, 311 (2014) (citing State v. Marshall, 148 N.J. 89, 158 (1997)). "To establish such a prima facie case, the defendant must demonstrate a reasonable likelihood that his or her claim will ultimately succeed on the merits." Marshall, 148 N.J. at 158. The court must view the facts "in the light most favorable to defendant."

Ibid. (quoting State v. Preciose, 129 N.J. 451, 462-63 (1992)); accord R. 3:22-10(b).

Under the Sixth Amendment of the United States Constitution, a criminal defendant is guaranteed the effective assistance of legal counsel in his defense. Strickland v. Washington, 466 U.S. 668, 687 (1984). To establish a deprivation of that right, a convicted defendant must satisfy the two-part test enunciated in Strickland by demonstrating that: (1) counsel's performance was deficient, and (2) the deficient performance actually prejudiced the accused's defense. Id. at 687; accord State v. Fritz, 105 N.J. 42, 58 (1987) (adopting the Strickland two-part test in New Jersey). When a defendant establishes a prima facie case of ineffective assistance of counsel under the Strickland/Fritz test, he is ordinarily entitled to an evidentiary hearing on his claims. Preciose, 129 N.J. at 462; R. 3:22-10(b).

"[J]udicial scrutiny of counsel's performance must be highly deferential." Marshall, 148 N.J. at 157 (quoting Strickland, 466 U.S. at 689). "[A]ny claimed errors of counsel must amount to more than mere tactical strategy." State v. Drisco, 355 N.J. Super. 283, 290 (App. Div. 2002) (citing Strickland, 466 U.S. at 689). "Adequate assistance of counsel is measured by a standard of reasonable competence." Ibid. (citing Strickland, 466 U.S. at 689). "The

14

standard does not demand 'the best of attorneys,' but rather requires that attorneys be not 'so ineffective as to make the idea of a fair trial meaningless.'" Ibid. (quoting State v. Davis, 116 N.J. 341, 351 (1989)).

"Courts are cautioned to avoid looking at events through the distorting lens of hindsight and second-guessing reasonable decisions made by counsel." State v. Nash, 212 N.J. 518, 543 (2013). In reviewing such claims, courts apply a strong presumption that defense counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Strickland, 466 U.S. at 690. "As a general rule, strategic miscalculations or trial mistakes are insufficient to warrant reversal 'except in those rare instances where they are of such magnitude as to thwart the fundamental guarantee of [a] fair trial.'" State v. Castagna, 187 N.J. 293, 314-15 (2006) (alteration in original) (quoting State v. Buonadonna, 122 N.J. 22, 42 (1991)).

We find no reason to second-guess trial counsel's advice to defendant here. Trial counsel's decisions were "strategically defensible." State v. Hightower, 120 N.J. 378, 402 (1990). Defendant received a fair trial.

With regard to trial counsel's failure to object to Rashad Gilliam's testimony, we conclude his testimony did not prejudice the outcome of the case.

Although Gilliam placed defendant in the Tavern, defendant's presence there was not disputed by the defense. Further, trial counsel used Gilliam's testimony to defendant's advantage. Gilliam testified defendant was not involved in any altercations that night and he did not see defendant commit any crimes. Trial counsel also elicited from Gilliam that he had never been afforded an opportunity to review or sign the defense investigator's report containing his prior statements that were used as prior inconsistent statements to impeach him. Defendant has not shown Gilliam's testimony prejudiced the outcome.

Following oral argument, the PCR judge reviewed those portions of the tavern's surveillance video designated by PCR counsel as well as footage from three cameras for the time period defendant was in the tavern, for the limited purpose of determining "what was shown to the jury and what was not shown to the jury" in relation to defendant's claim trial counsel failed to effectively challenge McCann's testimony. The PCR judge stated: "I have carefully reviewed the video and concluded its further use would not have any impact on the case. The quality of the video is poor and it shows nothing more than the defendant moving around in his seat."

For the first time on appeal, defendant argues it was error to review the video without granting an evidential hearing. He contends that by requesting

and reviewing the video footage, the PCR court "implicitly acknowledged the need for an evidentiary hearing on these issues." We disagree.

Defendant does not cite any authority in support of his position, nor are we aware of any precedent obligating a PCR court to grant an evidentiary hearing solely because it decides to view video footage that purportedly supports defendant's claim. Contrary to defendant's assertion, the determination that the video was not sufficiently clear to assist the court is not tantamount to being "unable to render a decision in this matter." The PCR judge decided each issue raised by defendant based on the record before him.

Defendant claims trial counsel was ineffective for failing to raise a constitutional challenge to the investigative detention video. The trial court issued the order permitting the investigative detention video before defendant's arrest and prior to trial counsel's involvement in the case. Trial counsel objected to the use of the video or, in the alternative, sought to limit the use of the video. The trial court concluded the video was not prejudicial and had significant probative value. The court redacted the portion of the tape where defendant asked for an attorney and defendant's presence in the tavern was not disputed. Therefore, the video was not prejudicial.

17

To the extent they are unaddressed, defendant's remaining arguments lack sufficient merit to warrant discussion in a written opinion.  R. 2:11-3(e)(2).

The PCR judge correctly found defendant is unable to satisfy either prong of the Strickland-Fritz test.  An evidentiary hearing was not required to resolve defendant's claims.  Accordingly, the PCR court properly denied defendant's petition without conducting an evidentiary hearing.

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION