**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NOS. A-0884-18T2
                      A-3243-18T2

STATE OF NEW JERSEY,

      Plaintiff-Respondent,

v.

AHMAR D. BUTLER, a/k/a
MAR BUTLER, and AHMAR
SPENCE,

      Defendant-Appellant.

_____

STATE OF NEW JERSEY,

      Plaintiff-Respondent,

v.

ANTWIONE A. PARSLEY,
a/k/a ANTOINE A. PARSLEY,
and ANTIONE PARSLEY,

      Defendant-Appellant.

_____

Submitted February 10, 2020 – Decided February 28, 2020

Before Judges Sabatino and Sumners.

On appeal from the Superior Court of New Jersey, Law Division, Salem County, Indictment No. 12-01-0001.

Hegge & Confusione, LLC, attorneys for appellant Ahmar Butler (Michael James Confusione, of counsel and on the brief).

Joseph E. Krakora, Public Defender, attorney for appellant Antwione Parsley (Andrew Robert Burroughs, Designated Counsel, on the briefs).

John T. Lehman, Salem County Prosecutor, attorney for respondent (David M. Galemba, Assistant Prosecutor, of counsel and on the briefs).

PER CURIAM

In these related[1] appeals, co-defendants Antwione A. Parsley and Ahmar Butler seek reversal of the trial court's denial of their respective petitions for post-conviction relief ("PCR"). For the reasons that follow, we affirm the trial court's decisions in part, vacate them in part, and remand for evidentiary hearings to explore alibi evidence and other specified matters.

_____

[1] We consolidate these appeals, which were calendared back-to-back, into a single opinion.

A-0884-18T2

I.

The State's proofs adduced at defendants' joint 2013 trial were summarized in this court's 2017 unpublished opinion affirming their convictions and that of their co-defendant, Jonathan P. Thomas. State v. Butler, et al., Nos. A-0381-13, A-1741-13, and A-2051-13 (App. Div. March 30, 2017). We incorporate by reference our prior recitation of the facts and procedural history. The following brief synopsis will suffice for purposes of these PCR appeals.

The victim, Joseph Hayes, was shot to death on September 7, 2008, in Salem City. That evening, Hayes was home with his girlfriend and the doorbell rang. Hayes went downstairs to answer the door. He walked to the back door, at which point his girlfriend heard multiple gunshots. She went downstairs and discovered Hayes lying in the back doorway bleeding.

Police responded to the scene, where Hayes was pronounced dead. The medical examiner later determined Hayes had died of multiple gunshot wounds. The parties stipulated that Hayes had been killed by bullets shot from two different handguns. No DNA or fingerprint evidence established the identities of the shooters.

A-0884-18T2

The State's theory at trial was that Hayes had been murdered because he was perceived to be a "snitch" whose name had appeared in discovery in an unrelated criminal case involving Parsley and Thomas. The State contended that Parsley and Thomas recruited Butler to assist them in killing Hayes.

The State presented several eyewitnesses who placed the three defendants near the scene of the shooting. One eyewitness, Malcolm Moore, saw Butler and Thomas with guns in their hands, and saw them leave the area with Parsley shortly after the shooting. Other witnesses stated that defendants had bragged about their involvement in the shooting. One of these witnesses, Darryl Massengill, stated that he had overheard Butler in prison admitting that he had fired some of the fatal shots at Hayes. There was also other evidence that linked Parsley and Thomas to the shooting.

The jury found Butler and Thomas guilty of murder, N.J.S.A. 2C:11-3(a)(1) and (2); aggravated assault, N.J.S.A. 2C:12-1(b)(1) and (2); possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(a); and conspiracy to commit murder and aggravated assault, N.J.S.A. 2C:5-2. The same jury found Parsley guilty of conspiracy to commit murder, N.J.S.A. 2C:5-2 and N.J.S.A. 2C:11-3(a)(1); and conspiracy to commit aggravated assault, N.J.S.A. 2C:5-2

4

and N.J.S.A. 2C:12-1(b)(1).  The trial court sentenced each defendant to a fifty-year prison term, with an eighty-five percent parole disqualifier prescribed by the No Early Release Act, N.J.S.A. 2C:43-7.2.

On direct appeal, we rejected numerous arguments presented by the three co-defendants, including claims of various evidentiary errors and alleged flaws in the jury instructions.  Butler, slip op. at 17-33.  We also upheld defendants' sentences.  The Supreme Court denied certification to all three defendants. 233 N.J. 17, 128, 129 (2017).

Parsley and Butler then separately filed PCR petitions.  Among other things, their petitions alleged their respective trial counsel had been ineffective in numerous respects.  They also contended they are entitled to new trials because of alleged newly discovered evidence.

Both defendants tendered affidavits from alleged alibi witnesses.  With respect to Parsley, he provided affidavits from Cornelius Allen, Robert Winchester, and Latasia Winchester, contending that Parsley was at the Winchester house playing cards on the evening of the shooting.  As to Butler, he presented affidavits from his girlfriend, Lanika Booker, and his cousin,

Jermaine Spence, who contended that Butler had been watching football at Booker's residence where she was babysitting at the time of the murder.

In addition, defendants tendered, as alleged newly discovered evidence, affidavits from several non-alibi witnesses. They contend these persons would have substantially discredited the testimony of several of the State's trial witnesses.

After considering the defense affidavits and the arguments of counsel, the PCR judge (who was not the judge who presided over the trial) denied both petitions. The PCR judge did so in an oral decision on October 15, 2018 denying Butler's petition, and in a separate written opinion dated November 28, 2018 denying Parsley's petition. The PCR judge concluded there was no need to conduct an evidentiary hearing for either defendant. These appeals ensued.

## II.

On appeal, Butler makes the following argument in his brief:

> THE TRIAL COURT ERRED IN DENYING DEFENDANT'S PETITION FOR POST-CONVICTION RELIEF WITHOUT AN EVIDENTIARY HEARING.

In addition, Parsley makes the following arguments in his own brief:

6

POINT I

AS MR. PARSLEY ESTABLISHED THAT HE RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL WHEN HIS ATTORNEY FAILED TO INVESTIGATE AND PRESENT EXCULPATORY WITNESS TESTIMONY, HE IS ENTITLED TO POST-CONVICTION RELIEF, OR AT A MINIMUM, TO AN EVIDENTIARY HEARING.

(1) Trial counsel failed to present the exculpatory statements of Cornelius Allen, Robert Winchester, and Latisha Winchester.

(2) Trial counsel failed to present the exculpatory statement of Vanaman IV.

(3) Trial counsel failed to investigate and present evidence to rebut the testimony of Bundy that Parsley made incriminating statements while in Salem County Jail.

(4) As trial counsel failed to adequately investigate the crime scene map, he denied his client a viable third-party defense.

POINT II

AS MR. PARSLEY PRESENTED NEWLY DISCOVERED MATERIAL AND EXCULPATORY EVIDENCE, THE PCR COURT ERRED WHEN IT FOUND HE WAS NOT ENTITLED TO A NEW TRIAL WITHOUT HOLDING AN EVIDENTIARY HEARING TO EVALUATE THE NEWLY DISCOVERED EVIDENCE.

7

(1) Charlene Daniels

(2) Delilah Hill

(3) Stephen Ross

(4) Oreander Callaway, Jr.

In evaluating these arguments, we apply well-established legal principles. Under the Sixth Amendment of the United States Constitution, a person accused of crimes is guaranteed the effective assistance of legal counsel in his defense. Strickland v. Washington, 466 U.S. 668, 687 (1984). To establish a deprivation of that right, a convicted defendant must satisfy the two-part test enunciated in Strickland by demonstrating that: (1) counsel's performance was deficient; and (2) the deficient performance actually prejudiced the accused's defense. Id. at 687; see also State v. Fritz, 105 N.J. 42, 58 (1987) (adopting the Strickland two-part test in New Jersey).

To obtain an evidentiary hearing on a PCR application based upon ineffective assistance claims, a defendant must make a prima facie showing of deficient performance and actual prejudice. State v. Preciose, 129 N.J. 451, 462-63 (1992). "When determining the propriety of conducting an evidentiary hearing, the PCR court should view the facts in the light most favorable to the

8

defendant." State v. Jones, 219 N.J. 298, 311 (2014) (citing State v. Marshall, 148 N.J. 89, 158 (1997)); see also Preciose, 129 N.J. at 462-63. "If, with the facts so viewed, the PCR claim has a reasonable probability of being meritorious, then the defendant should ordinarily receive an evidentiary hearing in order to prove his entitlement to relief." Jones, 219 N.J. at 311 (citing Marshall, 148 N.J. at 158).

When reviewing such claims of ineffectiveness, courts apply a strong presumption that defense counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Strickland, 466 U.S. at 690. "[C]omplaints 'merely of matters of trial strategy' will not serve to ground a constitutional claim of inadequacy . . . ." Fritz, 105 N.J. at 54 (citation omitted); see also State v. Echols, 199 N.J. 344, 357-59 (2009). "The quality of counsel's performance cannot be fairly assessed by focusing on a handful of issues while ignoring the totality of counsel's performance in the context of the State's evidence of defendant's guilt." State v. Castagna, 187 N.J. 293, 314 (2006) (citing State v. Marshall 123 N.J. 1, 165 (1991)). "As a general rule, strategic miscalculations or trial mistakes are insufficient to warrant reversal 'except in those rare instances where they are of

such magnitude as to thwart the fundamental guarantee of [a] fair trial.'" Id. at 314-15 (quoting State v. Buonadonna, 122 N.J. 22, 42 (1991)).

"[B]ald assertions" of deficient performance are insufficient to support a PCR application. State v. Cummings, 321 N.J. Super. 154, 170 (App. Div. 1999); see also R. 3:22-10(b); State v. Porter, 216 N.J. 343, 354-55 (2013) (reaffirming these principles in evaluating which of a defendant's various PCR claims warranted an evidentiary hearing).

In addition, in order to obtain a new trial based upon a claim of newly discovered evidence, a criminal defendant must establish several things. Such newly discovered evidence is sufficient to warrant a new trial only if it is: "(1) material to the issue and not merely cumulative or impeaching or contradictory; (2) discovered since the trial and not discoverable by reasonable diligence beforehand; and (3) of the sort that would probably change the jury's verdict if a new trial were granted." State v. Carter, 85 N.J. 300, 314 (1981). All three prongs of the Carter test must be satisfied to grant a new trial. Ibid.

As to the first prong of the Carter test, evidence is material if it "would 'have some bearing on the claims being advanced.'" Ways, 180 N.J. at 188 (quoting State v. Henries, 306 N.J. Super. 512, 531 (App. Div. 1997)). To that

10

end, "[c]learly, evidence that supports a defense, such as alibi, third-party guilt, or a general denial of guilt would be material." Ibid.

The first and third prongs of the Carter test are "inextricably intertwined." Nash, 212 N.J. at 549. The "analysis of newly discovered evidence essentially merges the first and third prongs of the Carter test." State v. Behn, 375 N.J. Super. 409, 432 (App. Div. 2005). Under these standards, "[t]he characterization of evidence as 'merely cumulative, or impeaching, or contradictory' is a judgment that such evidence is not of great significance and would probably not alter the outcome of a verdict." Ways, 180 N.J. at 189. By contrast, evidence "that would have the probable effect of raising a reasonable doubt as to the defendant's guilt would not be considered merely cumulative, impeaching, or contradictory." Ibid.

The second prong of the Carter test "recognizes that judgments must be accorded a degree of finality . . . ." Id. at 192. That prong therefore requires that the "defense . . . 'act with reasonable dispatch in searching for evidence before the start of the trial.'" Nash, 212 N.J. at 550 (quoting Ways, 180 N.J. at 192). Under that prong, the evidence must not have been discoverable prior to trial through the exercise of "reasonable diligence" in the context of the specific

11

circumstances of each case. Reasonable diligence does not require "totally exhaustive or superhuman effort." Behn, 375 N.J. Super. at 428.

Of course, a defendant "is not entitled to benefit from a strategic decision to withhold evidence." Ways, 180 N.J. at 192. A defendant gains no strategic advantage, however, if her or his attorney "fails to discover or overlooks exculpatory evidence." Ibid.

### A.

Bearing in mind these standards, we turn first to defendants' argument concerning the proffered alibi witnesses. The PCR judge rejected their claims of alibi, essentially because he was persuaded that the alibi witnesses were biased, that their proffered testimony was weak, and that their accounts, even if believed, would not conclusively rule out defendants' involvement in the fatal shooting.

Although we understand the logic of the PCR judge's reasoning, we conclude an evidentiary hearing is warranted under the circumstances to develop the record more fully concerning the alibi evidence and adjudicate the issues on a plenary record, consistent with case law.

12

We are mindful that a criminal defense attorney's decision to call or not call witnesses is a matter of trial strategy generally entitled to presumptive deference. See, e.g., State v. Arthur, 184 N.J. 307, 320 (2005) ("Determining which witnesses to call to the stand is one of the most difficult strategic decisions that any trial attorney must confront."). These principles of deference extend to counsel's decisions on alibi evidence. "Counsel's fear that a weak alibi could cause more harm than good is the type of strategic decision that should not be second guessed on appeal." State v. Drisco, 355 N.J. Super. 283, 291 (App. Div. 2002); see also State v. Coruzzi, 189 N.J. Super. 273, 321–22 (App. Div. 1983) (finding no error to not call the defendant's brother as alibi witness, when the testimony was contradicted by other, credible witnesses and could "undermine the entire defense strategy").

Nevertheless, the Supreme Court has also recognized that an attorney's failure to investigate an alibi defense can be "a serious deficiency that can result in the reversal of a conviction." State v. Porter, 216 N.J. 343, 353 (2013); see also State v. Ways, 180 N.J. 171, 188 (2004) (noting that "evidence that supports a defense, such as alibi, third-party guilt, or a general denial of guilt would be material.") "Even a suspicious or questionable affidavit supporting a PCR

petition 'must be tested for credibility and cannot be summarily rejected." Porter, 216 N.J. at 355 (quoting State v. Allen, 398 N.J. Super. 247, 258 (App. Div. 2008)).

In Porter, the Supreme Court remanded a case for an evidentiary hearing where a defendant and his girlfriend each submitted affidavits to establish the defendant's alibi that he was not at the scene of a homicide. The primary defense in that case was that the State's principal witness misidentified the defendant. Porter, 216 N.J. at 347. The trial court rejected the defendant's PCR petition without conducting an evidentiary hearing. The Supreme Court overturned that determination.

Among other things, the Court in Porter criticized the PCR court for making credibility findings based upon the written affidavits, without having the girlfriend testify at an evidentiary hearing. Id. at 356. As the Court explained, "[t]he proper way to determine [the girlfriend's] reaction was to assess her [alibi] testimony on direct and cross-examination." Ibid. The PCR court in Porter erred by speculating the jury would have found the girlfriend too biased to be believed. "There is no substitute for placing a witness on the stand and having the testimony scrutinized by an impartial factfinder." Ibid.

A-0884-18T2

Here, if, hypothetically, the alibi witnesses proffered by Parsley were found trustworthy, they would undermine testimony from the State's witnesses that he was seen on the street immediately before and following the fatal shooting. To be sure, that would not eliminate the possibility that Parsley, while not present at the shooting, took part in a conspiracy to kill or injure Hayes. Nevertheless, an evidentiary hearing to develop the factual record as to his alibi evidence is warranted, consistent with Porter.

We reach a similar conclusion as to Butler's alibi witnesses, both of whom placed him at the critical time away from the Hayes residence watching a football game on television. We recognize that Spence and Booker attest they were watching the football game with Butler, but neither of their affidavits mentions the other person. That arguable inconsistency, however, does not eliminate the appropriateness of a full evidentiary hearing to develop and evaluate the testimony, as well as counsel's strategic decisions.

We consequently vacate this aspect of the PCR judge's rulings and remand for an evidentiary hearing on the alibi proofs. In addition to testimony from the alibi witnesses, the trial court shall also consider hearing testimony from the respective defendant attorneys, explaining whether they investigated these

potential alibis and, if so, why they chose not to present these witnesses for strategic or other reasons.

B.

Apart from these alibi witnesses, defendants contend they are entitled to relief because of other evidence, some of it alleged to be newly discovered, which could have substantially undermined the State's case at trial. We agree with the PCR judge that certain portions of this evidence are inconsequential and do not require any evidentiary hearing. However, we conclude that other portions of the additional proof should be explored at an evidentiary hearing on remand.

Specifically, we agree with the PCR judge that the affidavits of three witnesses – Delilah Hill, William Vanaman IV, and Stephen Ross – are insufficient to establish a prima facie basis of exoneration to warrant an evidentiary hearing. In particular, Ross's assertion that Leslie Bundy, a State witness, could not have observed the shooting does not contradict Bundy's trial testimony that he heard gun shots and, about thirty minutes later, saw defendants together in the area. We agree with the PCR judge that Ross's proposed

A-0884-18T2

testimony has scant impeachment value and does not rise to a level requiring a plenary hearing.

The proffered testimony of Hill and Vanaman is likewise of little significance or weight. Defendants claim that Hill and Vanaman would have undermined the testimony of another State witness, Malcolm Moore. Moore testified that he was on Hedge Street at the time of the murder and saw defendants drive off together immediately afterward. Hill and Vanaman assert that they were on Hedge Street at the time of the murder and did not see Moore. Their proposed testimony does not directly contradict or refute Moore's observations, other than his presence at the location. Moore's testimony was already subject to extensive attack by defense counsel at trial, and presumably he was found by the jury to be credible. We are persuaded that additional testimony from Hill and Vanaman would have had no more than marginal or cumulative impact. No evidentiary hearing as to their accounts was required.

We reach a different procedural determination as to the affidavits of Shameek Brown, Oreander Callaway and Charlene Davis. Shameek Brown originally testified at trial that he had heard Butler make incriminating statements to Thomas. In a subsequent affidavit, he recanted his testimony and

17

stated he never heard any incriminating conversations between defendants. If Brown's subsequent recantation of his own testimony was found to be credible, it would comprise the sort of evidence that could raise reasonable doubt in a trial that relied heavily on the credibility of the State's witnesses.

Moreover, the affidavits of Callaway and Daniels suggest that a third party, not the defendants, committed the murder, either through that third party's admission or seeing him armed and fleeing the scene. Without any eyewitnesses to the shooting itself, this proof is at least facially significant.

An evidentiary hearing is warranted to explore these statements more deeply. Again, the PCR court may consider hearing testimony from defendants' former counsel about whether they had been aware of such evidence and strategically decided not to present it.

### III.

The remaining arguments presented by defendants lack sufficient merit to warrant discussion here. R. 2:11-3(e)(2). We add only some brief comments.

The State's crime scene map had an adequate evidential foundation and was reasonably used by Parsley's trial attorney in an effort to discredit the State's investigation. The use of the map on cross-examination was clearly within the

18

range of a strategic choice by counsel recognized under case law. See Arthur, 184 N.J. at 320-21.

The failure of Parsley's trial counsel to obtain jail records regarding an inmate named Glen Hayward was inconsequential. As the PCR judge rightly noted, Parsley has not shown that he made his counsel aware of the potential relevance of Hayward's jail status. Moreover, the testimony elicited by the prosecutor from Bundy that Parsley admitted his involvement in the shooting to a group of "five or six people" playing chess did not refer to Hayward by name. Hence, even if jail records proved that Hayward would not have been present during Butler's alleged admission, he was not identified by Bundy to the jury as having been present at that time. The relevance of Hayward's jail records is, at best, exceedingly remote.

Lastly, we discern no basis for a new trial arising from the jury having seen Butler on a video wearing prison garb. We are mindful that our case law generally disapproves of allowing defendants to appear before juries in prison garb, unless security reasons justify it. See State v. Artwell, 177 N.J. 526, 539 (2003). However, in the context of the present case, the jurors necessarily were informed that Butler had been incarcerated when he made his self-incriminating

19

statements. The video was relevant to the State's case because it strengthened the testimony that Butler and Thomas, while incarcerated, had been communicating about Hayes' death. We perceive no undue prejudice stemming from the incidental appearance of Butler in prison garb.

On all other points we have not mentioned, we adopt the sound reasoning of the PCR judge in his respective oral and written decisions.

Affirmed in part, vacated in part, and remanded in part. We do not retain jurisdiction. We direct the trial court conduct a case management conference within thirty days to plan the necessary evidentiary hearings.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION