**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1172-24

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

VIRGIL SUGGS, a/k/a
MALIK SUGGS, MALIK
HINTON, VIRGIL L.
SUGGS, and VIRGIL M.
SUGGS,

    Defendant-Appellant.

_____

        Submitted March 10, 2026 – Decided April 24, 2026

        Before Judges Gooden Brown and Rose.

        On appeal from the Superior Court of New Jersey, Law Division, Essex County, Indictment No. 13-03-0525.

        Jennifer N. Sellitti, Public Defender, attorney for appellant (Frank M. Gennaro, Designated Counsel, on the brief).

        Theodore N. Stephens II, Essex County Prosecutor, attorney for respondent (Shep A. Gerszberg, Assistant Prosecutor, of counsel and on the brief).

Appellant filed a supplemental brief on appellant's behalf.

PER CURIAM

This case returns to us following our remand for an evidentiary hearing on defendant Virgil Suggs's petition for post-conviction relief (PCR). In his petition, defendant raised ineffective assistance of counsel (IAC) claims in connection with trial counsel's failure to investigate a purported third-party guilt defense and trial counsel's purported conflict of interest arising from a prior relationship with a State witness. After conducting the evidentiary hearing, the PCR judge entered an order and written decision on November 13, 2024, denying defendant's petition. Defendant now appeals from the November 13 order and we affirm.

I.

Following a jury trial, defendant was convicted of murder, attempted murder, and related offenses that occurred in the late night of October 1, 2012. The convictions stemmed from defendant firing a handgun into a minivan occupied by four individuals, killing one of the occupants and wounding another. The minivan was stopped at an intersection in Newark when defendant opened fire. Two of the surviving victims, Simeerah Bunion-Clemmons and Phillip Smith, described the shooter to police as wearing a blue New York Giants

football jersey with white numbers on it. Surveillance camera footage from the scene depicted a man holding a handgun wearing a blue football jersey bearing the number "98" exit a vehicle that was following the minivan.

Four days after the shooting, by happenstance, the investigating detective noticed a man, later identified as defendant, at the Essex County Courthouse fitting the eyewitnesses' description. Defendant was wearing a blue Giants jersey bearing the number "98." Bunion-Clemmons and Smith were promptly brought to the courthouse where they separately identified defendant as the shooter from a photo array. Several days later, the wounded victim also identified defendant as the shooter from a photo array. At trial, all three eyewitnesses identified defendant as the shooter in court. Defendant testified, denying his involvement in the shooting.[1]

We affirmed defendant's convictions and life sentence in an unpublished opinion and our Supreme Court denied certification. State v. Suggs, No. A-0073-14 (App. Div. Sept. 20, 2016), certif. denied, 228 N.J. 478 (2017). The remand that is the subject of this appeal arose in connection with defendant's subsequent PCR petition, which the PCR judge denied without an evidentiary

---

[1] During his testimony, defendant disclosed he had previously been convicted of crimes on four separate occasions and had received three separate State prison sentences.

hearing. Defendant appealed, arguing trial counsel failed to properly investigate the relationship between Smith and Bunion-Clemmons, who was estranged from her husband at the time. Defendant asserted an investigation would have revealed the two were having an affair and would have produced impeachment evidence.

After considering defendant's argument, in an unpublished opinion, we reversed and remanded for an evidentiary hearing, stating:

> Defendant believes an investigation into this affair could have supported "the possibility of third-party guilt," with Bunion-Clemmons's husband as a potential suspect. In her decision, the PCR judge found that defendant's "allegations [did] not establish a prima facie claim of ineffective assistance of counsel entitling [defendant] to post-conviction relief from the jury's sound verdict; or in the alternative[,] warrant an evidentiary hearing." The judge found that there was nothing in the record supporting defendant's allegation that there was a romantic relationship between Smith and Bunion-Clemmons. However, the record was supplemented later with . . . Bunion-Clemmons's statement to police from October 2, 2012.

> Bunion-Clemmons, who was separated from her husband, disclosed that she and Smith had "been talking lately and [her] husband found out about it," but she also asserts that she does not think her husband "has something like this in him." When asked if she was having trouble with anyone, she responded that someone had broken into her house the previous Friday. Bunion-Clemmons was under the impression that burglary was committed by someone she knew

4

A-1172-24

personally because her children's possessions were not taken or touched, while her possessions were stolen.

Although Bunion-Clemmons asserts that she and Smith were "talking," there is no evidence that they were involved in a dating or physical relationship. However, because the PCR judge did not have the opportunity to review and consider this statement and given her determination on this issue was largely based on the lack of evidence, this question of effective assistance of counsel should be remanded for consideration of Bunion-Clemmons's statement to police.

[State v. Suggs, No. A-0474-18 (App. Div. Jan. 6, 2021) (slip op. at 8-9) (alterations in original).]

We also considered defendant's argument that an evidentiary hearing was needed "to show trial counsel's personal connection with Smith." Id. at 9. Although we did "not reach the merits" of the claim, we stated "[d]efendant may pursue this claim at the evidentiary hearing." Ibid.

At the evidentiary hearing conducted on May 2, 2024, trial counsel and defendant testified. Trial counsel, a seasoned attorney with forty years of experience and twenty years handling "strictly homicide cases," believed the case "came down to an identification issue" and shared this belief with defendant. Counsel explained his trial strategy was to show the jury the "witnesses . . . were not[] and could not have been in a position . . . to make a credible identification." Counsel also believed "defendant being arrested . . .

5

four days later in th[e number 98] jersey" along with "the physique of the individual" in the surveillance footage were "very significant" and "problematic." Nevertheless, counsel acknowledged defendant's assertion of innocence.

Regarding Bunion-Clemmons's October 2, 2012 statement to the police, trial counsel testified he received the statement when "discovery was provided" and had the statement when he cross-examined Bunion-Clemmons. Counsel stated after Bunion-Clemmons made the statement, she identified defendant as the shooter. Counsel stressed his focus during Bunion-Clemmons's cross-examination and his summation was to demonstrate to the jury that "it would have been difficult to impossible for [Bunion-Clemmons] to make an identification, as she would have been under attack also." Counsel did not recall whether Bunion-Clemmons and Smith were in "a relationship" and did not recall discussing with defendant "any type of third-party guilt [defense]." However, counsel testified because defendant denied involvement in the shooting, "the presumption" was "it must have been some other third person."

Regarding his relationship with Smith, trial counsel testified "when Smith was called to the stand," both he and Smith "realized that [they] knew each other previously." Counsel immediately told the prosecutor, the trial court, and

6

defendant that in either 2009 or 2010, early in his career officiating basketball, Smith had coached a basketball team that trial counsel had officiated. Counsel believed the discussion was "placed on the record." Counsel specified he "would have known [Smith] . . . for the stint of a season, which would have been a period of two months." At the time, neither knew the other by name but would refer to each other as "coach" and "Mr. Referee." Counsel stressed he did not interact or "socialize with [Smith] outside of" basketball.

When counsel disclosed to defendant his prior relationship with Smith, he explained:

> It was a potential conflict of interest . . . if it was somebody that I knew. I wanted you to be aware of the fact that this is a guy that I knew, had interacted with, that I don't think there's a problem, it doesn't affect how I want to do what we have to do. I didn't think there was any benefit of adjourning it and . . . I didn't think there was any need to reassign the case because there didn't appear to be any conflict of interest . . . .

Trial counsel stated defendant did not "express any objection" or have any questions regarding the relationship or his cross-examination of Smith. Counsel confirmed his relationship with Smith did not affect or alter his cross-examination and he proceeded as he had with Bunion-Clemmons. Specifically, counsel sought to discredit Smith's identification of defendant based on Smith's location in the car at the time of the shooting.

7

A-1172-24

By contrast, defendant testified trial counsel did not "personally tell [ him]" about his relationship with Smith. Instead, defendant "overheard the conversation through the trial headphones when they had the sidebar." Once he heard the conversation, defendant was concerned about the relationship but did not "get a chance to express [his] view to [defense counsel]" or the trial judge. When asked why defendant did not raise an objection with the trial judge, defendant replied he did not wish to "upset" the judge as she had "scolded" him for "making [an] outburst."[2] Regarding Bunion-Clemmons, defendant testified that given the "domestic disputes," he asked trial counsel whether her husband had been interviewed but counsel "shrugged his shoulders like as if to say . . . it doesn't matter at this point."

Following the evidentiary hearing, the PCR judge denied defendant's petition in a November 13, 2024 order. In an accompanying written decision, the judge explained neither Bunion-Clemmons's statement to the police about her estranged husband nor trial counsel's familiarity with Smith upon which defendant relied to support his petition satisfied the standard of IAC. In that regard, the judge found "trial counsel's testimony credible" and "believable."

---

[2] Defendant's outburst occurred on June 4, 2014. Trial counsel disclosed his prior interaction with Smith on May 28, 2014, a week before defendant's outburst.

According to the judge, "[t]rial counsel answered all questions posed by both [defendant's] counsel and the State in the same direct, forthright manner."

In rejecting defendant's contention that trial counsel's failure to investigate a third-party guilt defense in connection with Bunion-Clemmons's estranged husband was unreasonable, the judge found "the alleged third-party guilt defense [was] not supported by the evidence in the trial record and/or addressed at the evidentiary hearing." The judge explained:

> The evidence at trial established that Bunion-Clemmons and Smith were friends. There was nothing in the evidence elicited at trial that would support the speculation that Bunion-Clemmons and Smith were romantically involved. . . .
>
> There is nothing in the trial record or evidentiary hearing record that indicate[d] there was any physical similarity between [Bunion-Clemmons's estranged husband] and [defendant]. There was no evidence adduced at the evidentiary hearing that there is even a physical similarity between the person described by the surviving witnesses and the individual captured on surveillance wearing a distinctive #[98] football Giants jersey that the jury determined was properly identified as [defendant]. Trial counsel testified at the evidentiary hearing that he recognized and discussed with [defendant] that "it was an identification case" and that he (trial counsel) was concerned about the physical description of the perpetrator and that which was observable in surveillance footage.
>
> There is no evidence whatsoever that [Bunion Clemmons's estranged husband] owned a #[98] Giants

[j]ersey, that he wore glasses, as those observed and described by the witnesses and captured in surveillance video, or that he had similar build, hairstyle, and/or similar beard as . . . [defendant] at the time of his arrest as captured in still images in evidence provided to the jury which the jury compared during deliberations to the surveillance in evidence. The [c]ourt finds that . . . [defendant] has provided no evidence of an actual romantic relationship between Bunion-Clemmons [and] Smith and it is mere speculation which cannot support, without more[,] a claim of third-party guilt.

According to the judge,

[t]he alleged romantic relationship that may or may not have existed between Bunion-Clemmons and Smith did not make it more plausible that . . . [defendant] was not the shooter. Furthermore, trial counsel acted reasonably given that the case centered on identification and whether or not . . . the shooter in the surveillance video was . . . [defendant,] which the jurors concluded that he was.

The judge added:

Assuming for the sake of argument that trial counsel failed to properly investigate and/or cross-examine the relationship between Bunion-Clemmons and Smith, [defendant] falls short to establish a concrete link or direct connection between the potential third party . . . and . . . the crime . . . that would permit such argument. As previously stated, [defendant] presents mere speculation and remote acts.

Turning to defendant's purported conflict of interest claim, the judge recounted trial counsel's testimony, particularly crediting his account that he

"informed . . . [defendant] regarding the potential conflict and informed all parties, including the [c]ourt as soon as he realized the same." In addition, counsel was "clear in his testimony that he never socialized with [Smith] at any time during the league outside of the league and had not socialized with him before or after the trial." Further, counsel "questioned Smith in the exact same manner as he would any witness attempting to aggressively demonstrate to the jury that neither Smith [n]or any other witness had a solid opportunity to view the 'shooter' and therefore their identifications of [defendant] were not credible or reliable." The judge concluded counsel's relationship with Smith was "negligible at best and . . . immaterial to [defendant's] case."

The judge explained:

> Counsel's wealth of experience as a trial lawyer with over [thirty] years of experience, most of which [include] trying serious cases[,] including a vast number of homicides[,] is unchallenged. The [c]ourt finds further that [c]ounsel aggressively and zealously questioned all of the State's witnesses[,] including Smith[,] and provided [defendant] with a full and complete defense. Counsel . . . advised [defendant] regarding the consequences of testifying, advice [defendant] ignored, despite the physical evidence and testimonial evidence adduced at trial. The jury simply did not believe [defendant's] testimony.

In this ensuing appeal, in his counseled brief, defendant raises the following points for our consideration:

11

POINT ONE

DEFENDANT ESTABLISHED BY A PREPONDERANCE OF THE EVIDENCE THAT HIS TRIAL COUNSEL'S PERFORMANCE WAS DEFICIENT, AND THAT HE WAS PREJUDICED BY HIS COUNSEL'S ERRORS.

    A.    THE PREVAILING LEGAL PRINCIPLES REGARDING CLAIMS OF [IAC] AND PETITIONS FOR [PCR].

    B.    TRIAL COUNSEL'S FAILURE TO ADEQUATELY INVESTIGATE THE POTENTIAL THIRD[-]PARTY GUILT DEFENSE RAISED BY MS. BUNION-CLEMMONS['S] ESTRANGEMENT FROM HER HUSBAND CONSTITUTED [IAC].

    C.    TRIAL COUNSEL'S FAILURE TO ADVISE DEFENDANT OF HIS ACQUAINTANCE WITH WITNESS PHILLIP SMITH AND TO OBTAIN HIS CONSENT TO CONTINUE HIS REPRESENTATION CONSTITUTED [IAC].

In his self-represented supplemental brief, defendant argues:

POINT I

TRIAL COUNSEL'S TESTIMONY AT THE PCR REMAND HEARING, AS IT RELATED TO CRITICAL FACTS IN DISPUTE, TO WIT: THAT HE ADVISED DEFENDANT OF HIS ACQUAINTANCE WITH PHILLIP SMITH, A KEY WITNESS FOR THE STATE, WAS NOT SUPPORTED BY THE TRIAL

12

RECORD AND SHOULD NOT BE AFFORDED CUSTOMARY DUE DEFERENCE.

II.

In State v. Pierre, 223 N.J. 560 (2015), our Supreme Court established the standard of review in PCR cases where the PCR court holds an evidentiary hearing:

> In reviewing a PCR court's factual findings based on live testimony, an appellate court applies a deferential standard; it "will uphold the PCR court's findings that are supported by sufficient credible evidence in the record." Indeed, "[a]n appellate court's reading of a cold record is a pale substitute for a trial judge's assessment of the credibility of a witness he [or she] has observed firsthand." However, a "PCR court's interpretation of the law" is afforded no deference[] and is "reviewed de novo." "[F]or mixed questions of law and fact, [an appellate court] give[s] deference . . . to the supported factual findings of the trial court, but review[s] de novo the lower court's application of any legal rules to such factual findings."
>
> [Id. at 576-77 (second, third, and fourth alteration added) (omission in original) (citations omitted).]

To reverse a conviction based on IAC, a defendant must demonstrate "by a preponderance of the credible evidence" that the performance of defendant's attorney fell below the objective standard of reasonableness set forth in Strickland v. Washington, 466 U.S. 668, 687-88 (1984), and adopted in State v. Fritz, 105 N.J. 42, 49-58 (1987), and that the outcome would have been different

13

without the purported deficient performance. State v. Echols, 199 N.J. 344, 357-59 (2009). Stated simply, a defendant must show that: (1) counsel's performance was deficient; and (2) the deficient performance prejudiced the defense. Strickland, 466 U.S. at 687; Fritz, 105 N.J. at 58.

To satisfy the first prong, a defendant must "show[] that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed [to] the defendant by the Sixth Amendment" and "that counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 687-88. "Judicial scrutiny of counsel's performance must be highly deferential," and a defendant "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Id. at 689 (quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955)). As such, "[i]f counsel thoroughly investigates law and facts, considering all possible options, his or her trial strategy is 'virtually unchalleng[e]able.'" State v. Savage, 120 N.J. 594, 617 (1990) (quoting Strickland, 466 U.S. at 690-91).

On the other hand, IAC may be established "when counsel fails to conduct an adequate pre-trial investigation." State v. Porter, 216 N.J. 343, 352 (2013). "[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any

14

ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." Strickland, 466 U.S. at 691. Still, "a defendant is entitled to a complete and vigorous defense, requiring counsel, at the very least, to investigate all substantial defenses available to a defendant." State v. Russo, 333 N.J. Super. 119, 139 (App. Div. 2000).

To satisfy the prejudice prong of an IAC claim, "[t]he error committed must be so serious as to undermine the court's confidence in the jury's verdict or result reached." State v. Chew, 179 N.J. 186, 204 (2004) (citing Strickland, 466 U.S. at 694). This prong generally requires that a defendant establish a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. "That 'is an exacting standard.'" State v. Gideon, 244 N.J. 538, 551 (2021) (quoting State v. Allegro, 193 N.J. 352, 367 (2008)).

Failure to meet either prong of the two-pronged Strickland/Fritz test results in the denial of a petition for PCR. State v. Parker, 212 N.J. 269, 280 (2012) (citing Echols, 199 N.J. at 358). That said, "courts are permitted leeway to choose to examine first whether a defendant has been prejudiced, and if not, to dismiss the claim without determining whether counsel's performance was

constitutionally deficient." State v. Gaitan, 209 N.J. 339, 350 (2012) (citation omitted) (citing Strickland, 466 U.S. at 697).

Applying these principles, we agree with the judge defendant failed to establish an IAC claim under the Strickland/Fritz standard and affirm substantially for the reasons stated in the judge's well-reasoned decision. The judge's factual findings, which are entitled to our deference, are supported by sufficient credible evidence in the record and the judge's legal conclusions are sound.

Defendant failed to produce any previously unknown facts that additional investigation into a third-party guilt defense would have uncovered and counsel's strategic pursuit of a misidentification defense under the circumstances was entirely reasonable. At the evidentiary hearing, trial counsel acknowledged receiving Bunion-Clemmons's October 2, 2012 statement when discovery was provided but chose to pursue a misidentification defense because he believed it constituted a stronger trial strategy. That the theory defense counsel chose to pursue failed does not alone establish IAC. State v. Bey, 161 N.J. 233, 251 (1999) ("Merely because a trial strategy fails does not mean that counsel was ineffective.").

A-1172-24

Even if counsel's performance was deficient, defendant failed to meet the second Strickland/Fritz prong because he has not shown a reasonable probability that but for the deficiency, the jury would have acquitted him. Nothing in the record ties Bunion-Clemmons's estranged husband to the shooting. As the PCR judge pointed out, there was no evidence Bunion-Clemmons's estranged husband "owned a #[98] Giants [j]ersey," or otherwise matched the description of the shooter depicted in the surveillance footage. See State v. Koedatich, 112 N.J. 225, 303 (1988) (holding to establish a third-party guilt defense, a defendant must do more than "raise[] a possible ground of suspicion"). Critically, Bunion-Clemmons identified defendant, not her husband, as the shooter. Given the strength of the State's proofs, it is clear a third-party guilt defense, much like the unsuccessful misidentification defense, would not have changed the outcome.

In addition, the prior minimal interaction between trial counsel and Smith did not create a reasonable likelihood or a significant risk that counsel's performance would be adversely impacted or materially limited. Indeed, as the judge found, counsel cross-examined Smith in the same manner he questioned any other witness, showing no restraint on his advocacy or independent judgment. Further, defendant was aware of the prior interaction and raised no objection at trial.

17

Defendant asserts trial counsel violated RPC 1.7, which provides:

> (a) Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:
>
>> (1) the representation of one client will be directly adverse to another client; or
>>
>> (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client, or a third person or by a personal interest of the lawyer.
>
> (b) Notwithstanding the existence of a concurrent conflict of interest under paragraph (a), a lawyer may represent a client if:
>
>> (1) each affected client gives informed consent, confirmed in writing, after full disclosure and consultation, provided, however, that a public entity cannot consent to any such representation. When the lawyer represents multiple clients in a single matter, the consultation shall include an explanation of the common representation and the advantages and risks involved;
>>
>> (2) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;
>>
>> (3) the representation is not prohibited by law; and

18

(4) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal.

Generally, for counsel to be "effective" under our New Jersey Constitution, counsel must

> represent[] his [or her] client with undivided loyalty, "[]'unimpaired' by conflicting interests." State v. Norman, 151 N.J. 5, 23 (1997) (quoting State v. Bellucci, 81 N.J. 531, 538 (1980)). That being the case, it becomes clear that an attorney hobbled by conflicting interests that so thoroughly impede his ability to exercise single-minded loyalty on behalf of the client cannot render the effective assistance guaranteed by our constitution.
>
> [State v. Cottle, 194 N.J. 449, 467 (2008) (citations reformatted).]

Still, "a great likelihood of prejudice must be shown . . . to establish constitutionally defective representation of counsel," id. at 467-68 (quoting Norman, 151 N.J. at 25), and the conflict "must be based on an actual conflict or potential conflict of interest" rather than just create an appearance of impropriety, State v. Hudson, 443 N.J. Super. 276, 289 (App. Div. 2015). That said, a violation of conflict rules does not automatically equate to IAC. See Norman, 151 N.J. at 28-30, 28 n.3 (finding attorney who terminated representation of a defendant and then joined a partnership with an attorney who

was representing a codefendant had violated the conflict rules but did not, by that action alone, render IAC).

"To be sure, New Jersey courts have departed from their federal counterparts and 'have exhibited a much lower tolerance for conflict-ridden representation under the New Jersey Constitution than federal courts have under the United States Constitution.'" State v. Kearney, 479 N.J. Super. 539, 557 (App. Div. 2024) (quoting Cottle, 194 N.J. at 470), certif. granted, 260 N.J. 327 (2025). "To avoid the prejudice inquiry under prong two of Strickland," a defendant must show that there is an "actual" conflict and "the conflict adversely affected counsel's performance." Kearney, 479 N.J. Super. at 556-57 (quoting Mickens v. Taylor, 535 U.S. 162, 170 (2002)). On the other hand, New Jersey's Constitution "provides broader protection against conflicts than . . . the [f]ederal [c]onstitution." Id. at 557 (quoting State v. Drisco, 355 N.J. Super. 283, 292 (App. Div. 2002)).

New Jersey courts first determine "whether the alleged conflict is a 'per se conflict,'" and, if so, "prejudice is presumed in the absence of a valid waiver." Ibid. (quoting Cottle, 194 N.J. at 467). "The 'per se analysis is reserved for those cases in which counsel's performance is so likely to prejudice the accused that it is tantamount to a complete denial of counsel.'" Ibid. (quoting Savage,

20

120 N.J. at 616).  Even so, our Supreme Court has limited this per se rule to "cases in which 'a private attorney, or any lawyer associated with that attorney, is involved in simultaneous dual representations of codefendants.'"  Cottle, 194 N.J. at 467 (quoting Norman, 151 N.J. at 24-25); see Kearney, 479 N.J. Super. at 558 (collecting cases).

Here, those circumstances did not exist.  Trial counsel's prior interaction with Smith, a non-client, was brief and neutral.  Because there was no "great likelihood of prejudice," defendant failed "to establish constitutionally defective representation of counsel."  Cottle, 194 N.J. at 467-68 (quoting Norman, 151 N.J. at 25).

We have considered defendant's remaining arguments but they lack sufficient merit to warrant discussion in a written opinion.  R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Hanley

Clerk of the Appellate Division